**VOGT'S DAIRIES, Inc., v. WICKARD,**
Secretary of Agriculture.

District Court, S. D. New York.
March 23, 1942.

Edward L. Cole, of New York City, for plaintiff.

Mathias F. Correa, U. S. Atty., of New York City (William L. Lynch, Asst. U. S. Atty., of New York City, and Edward O. Mather, of Washington, D. C., Principal Atty., Office of the Solicitor, U. S. Department of Agriculture, of counsel), for defendant.

MANDELBAUM, District Judge.

Plaintiff sues in equity to review two rulings of the Secretary of Argiculture as not being in accordance with law. Section 8c (15) (B) of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 608c (15) (B). The two controversies are separate and distinct.

There is no dispute as to the facts which have been stipulated. The first controversy involves the failure of the Market Administrator to accept the plaintiff's monthly reports for the months of October and November, 1939, with respect to the receipt by the plaintiff of milk at its plant in Delhi, New York. (It had another plant at New Kingston, New York).

Plaintiff was required to and did file under protest amended reports for those months, omitting receipts of milk for a ten-day period from October 24th, 1939, to November 2nd, 1939, in which its Delhi

plant was not approved by a municipal health authority.

The Market Administrator based his ruling on the fact that during the said ten-day period, the plaintiff was not a handler of milk and hence was not entitled to share in the pool. By this ruling, the plaintiff was out of pocket the sum of $1,524.62. Plaintiff has no quarrel with the findings of fact, but urges that the Market Administrator erroneously construed the provisions of Order #27.

This order was issued by the Secretary of Agriculture to regulate the handling of milk in the New York Metropolitan Marketing Area. It defines a "producer" (Section 1, subd. 5) as any person who produces milk which is delivered to a handler at a plant which is approved by any health authority for the receiving of milk to be sold in the marketing area. It further defines, in part "handler" (Section 1, subd. 6) as any person who engages in the handling of milk or cream therefrom which was received at a plant approved by any health authority for the receiving of milk to be sold in the marketing area.

It is agreed that for a ten-day period, the plaintiff's Delhi plant, was not approved by a health authority although for a time previous to the ten day period and thereafter, the Delhi plant was duly approved. Plaintiff makes the point that an examination of the express provisions of Order #27 will show that it was obligated to report and pay as to all milk received by it during the months of October and November, 1939. It further claims that there is no specific provision in the order as to when and under what conditions the plaintiff becomes a non-handler of milk; that the Market Administrator's treatment of the plaintiff as a non-handler of milk for the ten-day period arises out of only a possible implication and not an expression from the definition of "handler" contained in Section 1, subd. 6 of Order #27.

■ The order imposes upon all the members of the equalization pool certain obligations, conditions, and duties which must be strictly adhered to in order for them to share in the benefits of such pool. Nevertheless, plaintiff argues that it was obligated to report all the milk received despite the fact that its Delhi plant did not receive the approval of the municipal health authority for a specified period of time, and that the Market Administrator was without power to reject such report. I cannot agree. The order does provide for final monthly reports of the total quantity of milk received from the producers. But "producer" is also defined as one who produces milk which is delivered to a handler at a plant which is approved by a health authority. It is clear that during the ten-day period plaintiff was not a handler of milk, nor were those from whom it received the milk producers.

■ The language of the order is clear and unambiguous and in my opinion, no sound argument has been given why the plaintiff should share with other handlers in the pool during such time that its plant was not approved. I might add, that if plaintiff's position is tenable it could very well share in the pool even if its plant was not approved for 29 days out of each month throughout the year. It is patent that such result could not have been intended. It follows that the Market Administrator acted in accordance with law in refusing the reports submitted by the plaintiff for the months of October and November, 1939.

The second controversy reaches this court by virtue of the refusal of the Secretary of Agriculture to exempt the plaintiff from the strict application by the Market Administrator of the definition of Class III-B milk (frozen cream) contained in Article III, Sec. 2, subd. 5 of Order #27.

Under the strict application of this definition, the Market Administrator reclassified plaintiff's product to the higher price, Class II-A (fresh cream) which was held and transported from plaintiff's licensed cold storage warehouse in October, 1939, and reported by plaintiff for that month as Class III-B milk. Because of this reclassification to a higher price class, the plaintiff's account with the pool fund was debited in the sum of $799.59.

As defined in the order, Class III-B milk is milk in the form of cream, which is subsequently held in a licensed cold storage warehouse for more than seven days at a temperature below zero degrees fahrenheit. The conceded facts indicate that for no period of seven days was the temperature in plaintiff's warehouse as required under the definition.

The plaintiff urged at the hearing below and before the Secretary, as it does now, that equitable considerations require an exemption from the strict compliance with the administrative definition. It appears that its refrigeration plant broke down through an accident; that it was promptly repaired at a great expense and that in any event, the product actually was sold as

frozen cream (this cream was sold to plaintiff's affiliate).

The plaintiff submits that upon these facts, the Market Administrator's reclassification was arbitrary, capricious and unreasonable and not in accordance with law; that the Secretary of Argiculture had equitable powers of exemption and erred in not overruling the reclassification.

The court's power to exempt a handler from a strict compliance with the administrative definition is questioned and I believe rightfully so. Although this is a proceeding in equity, the function of the court is limited and it is merely called upon to determine if the findings by the administrative body are in accordance with law. New York State Guernsey Breeders Co-op. v. Wallace, D.C., 28 F.Supp. 590.

Even if the court were empowered to treat this controversy as a matter of discretion, I would be disinclined to disturb the findings which were approved by the Secretary of Agriculture. While the plaintiff's position might be characterized as unfortunate, it cannot serve as a basis for the claim that the action below was arbitrary, capricious and unreasonable. With the purposes of the Argiculture Marketing Agreement Act of 1937, as well as Order #27 issued thereunder in mind, I must agree with Judge Bryant's statement in a somewhat similar matter as the one at bar, that "parties cannot obtain the benefits of this classification except by strict compliance with all the requirements of the section". Sauquoit Valley Farmers Coop., Inc., v. Wickard, D.C.N.D.N.Y., 45 F. Supp. 104, opinion dated January 3rd, 1942.

The complaint is dismissed as to both controversies but without costs.