**WAWA DAIRY FARMS, Inc., v. WICKARD, Secretary of Agriculture (INTER-STATE MILK PRODUCERS COOPERATIVE, Intervener).**

No. 3171.

District Court, E. D. Pennsylvania.

June 30, 1944.

Ellwood J. Turner, of Chester, Pa., and James F. Masterson, of Philadelphia, Pa., for plaintiff.

James P. McCormick, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., Thomas F. Green, Jr., and Clarence H. Girard, Office of Solicitor,

Department of Agriculture, both of Washington, D. C., and Leonard O. Carson, Regional Atty., and Rogers N. Robinson, Office of Solicitor, Department of Agriculture, both of Philadelphia, Pa., for defendant.

A. Evans Kephart, of Philadelphia, Pa., for intervener Inter-State Milk Producers Cooperative.

BARD, District Judge.

This action was instituted by plaintiff under Section 8c (15) (B) of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 608c (15) (B), to review a ruling of the Secretary of Agriculture in a proceeding under Section 8c (15) (A) of the Act, 7 U.S.C.A. § 608c (15) (A).

The Agricultural Marketing Agreement Act is designed to establish prices to farmers at a level which will give agricultural commodities a purchasing power equal to that in a base period, i. e., "to restore parity prices." United States v. Rock Royal Cooperative, Inc., 307 U.S. 533, 575, 59 S.Ct. 993, 1014, 83 L.Ed. 1446, 1471. To this end the Secretary of Agriculture is authorized to issue marketing orders fixing a minimum price payable by handlers, or distributors, of milk to producers thereof in an amount sufficient to defray feed and other costs, and thereby to insure sufficient wholesome milk for the public.

In accordance with the procedure prescribed by Section 8c (3) and (4) of the Act, a public hearing was held during the last few months of 1941 to adduce evidence in connection with a proposed marketing agreement and order for the handling of milk in the Philadelphia area. An order, Order No. 61, was duly promulgated and became effective April 1, 1942. Plaintiff subsequently filed with the Secretary of Agriculture a petition asking for a modification of specific sections of the order or, in the alternative, that it be declared exempt from the provisions thereof as provided in Section 8c (15) (A) of the Act.[1] This petition was denied and exceptions were filed and argued before the Secretary of Agriculture on January 27, 1943. On April 30, 1943 the Secretary filed findings of fact and an order denying plaintiff the relief it sought. Thereupon plaintiff instituted the present action for review of the ruling of the Secretary.

Defendant filed an answer to the complaint, and an answer was likewise filed by Inter-State Milk Producers Cooperative, which was permitted to intervene in the proceedings on behalf of producers dealing with plaintiff. A certified copy of the proceedings before the Secretary were incorporated as part of his answer. The Secretary then moved for judgment on the pleadings in accordance with Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Plaintiff is a Pennsylvania corporation engaged in the handling of milk for distribution in the Philadelphia area. Since 1929 it has maintained a receiving, processing and bottling plant in Delaware County about eighteen miles from City Hall, Philadelphia, and a distributing plant within the limits of that city. In the former plant milk is received, weighed, tested and cooled and stored until processed and bottled. All but a small percentage of this milk is distributed by plaintiff in Philadelphia. The milk is received from about 130 producers at an average distance of thirty miles from the Delaware County plant.

Order No. 61 contains a complex set of regulations designed to establish uniform minimum prices to producers of milk distributed in the Philadelphia marketing area. The precise issue involved in the present case, however, may be sufficiently narrowed that many of the complexities may be disregarded. For present purposes the order may be regarded as setting up a zone within eleven miles of City Hall, Philadelphia, and establishing a uniform minimum price for milk of like quality, payable by each handler to the producers from whom it is received. A second zone is set up for the area beyond eleven miles from City Hall but within thirty-one miles thereof. For milk received in this zone handlers are permitted to re-

[1] This section reads as follows: "Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law."

duce the Philadelphia minimum price by an amount specified in a schedule and graduated upward as the distance of their plants from City Hall, Philadelphia, increases. This differential may be designated as a "transportation allowance" or "transportation differential". For handlers who receive milk at a plant in the zone beyond thirty-one miles from City Hall, a transportation differential is similarly allowed and an additional differential, which may be designated as a "receiving station allowance" or "receiving station differential" is permitted as a deduction from the Philadelphia minimum price.

Receiving stations are plants which receive, test, weigh and cool milk received from producers. They may be combined, as in plaintiff's case, with a processing or bottling plant, or they may ship the milk to a city plant for processing, bottling and distribution. Receiving stations perform a service for the producers of milk in that they supply what individual producers do not have. This service consists principally in the cooling of the milk and its preservation in good condition until it reaches the city market. In this connection there is the additional factor that the bacteria count is kept lower, which entitles the producer to a slightly higher price from the handler by way of a bonus. Receiving stations often perform the further service of relieving the producer from the necessity of delivering milk at inconvenient times.

Plaintiff's complaint attacks the differential established in Order No. 61 on the grounds that there is no substantial evidence in the record to establish their establishment, and that they are arbitrary, unreasonable, discriminatory and confiscatory as applied to plaintiff. Its contention, in its simplest and basic form, is that there is nothing in the evidence which justifies the fixing of the line thirty-one miles from City Hall, Philadelphia, as the point beyond which a receiving station allowance or differential is permitted and denying such differential to plants between eleven and thirty-one miles from that point. It contends that its plant, which is eighteen miles from City Hall, Philadelphia, renders essentially the same service to the producers as do those beyond thirty-one miles, and that the failure to grant a similar allowance to it gives a crippling competitive advantage to com-

peting handlers distributing in the Philadelphia marketing area and having receiving stations beyond thirty-one miles from City Hall. It further contends that the result of the enforcement of this order as to it will be to ruin the value of its plant in Delaware County, in which it has a very large investment, and to imperil or destroy its ability to continue operations.

The Secretary of Agriculture contends that there is substantial evidence to justify the line of demarcation at thirty-one miles; that, specifically, the services rendered to producers by receiving stations that close to the eleven mile line representing the Philadelphia metropolitan area are too insubstantial to warrant any allowance in addition to the transportation allowance; and that to grant such an allowance would be unfair to the producers and destructive of the fundamental purposes of the order.

A brief consideration of the prior practices in the marketing of milk in the area may be helpful in understanding and resolving these contentions. The cost of getting milk to the city market has always been borne by the producer either in shipping his milk directly to the city market or by a deduction from the price he received if he delivered it to a receiving station outside the marketing area. For the further services rendered by receiving stations, such as the cooling of the milk and keeping it in good condition until it reached the city market, and such other benefits to the producer as have been indicated above, an additional reduction in the price was customarily made by the handlers.

As indicated previously, plaintiff's challenge of Order No. 61 is directed to its prohibition of the additional differential for receiving stations between eleven and thirty-one miles from City Hall, Philadelphia, and its allowance to stations beyond that zone. It argues not without considerable force, that the very fact that producers for whose benefit the act and order purport to be designed have been willing to accept the lower price resulting from plaintiff's receiving station deduction in preference to shipping it directly to the city market demonstrates that they recognize and concede the value of the services rendered by plaintiff's plant.[2] It further argues that the evidence in no way supports the Secretary's conclusion that it does not perform

---

[2] The fact that intervenor, representing producers selling milk to plaintiff, vigorously supports this order which re-

sults in a higher minimum price to producers selling to plaintiff and delivering to its plant obviously does not detract

for its producers the same service that receiving stations beyond thirty-one miles perform for their producers, and lays particular emphasis on evidence as to the difficulties the producers would have in getting their morning milk to the city market before nine o'clock in the morning, as required by health regulations, if they were to ship directly.

In support of the challenged provisions of Order No. 61, the Secretary relies on evidence, inter alia, that improved highways and motor transportation conditions have considerably decreased the service rendered by receiving stations "close-in" to the market; that many of such "close-in" stations have been closed by the handlers; that milk is hauled from farms directly to the market area, a maximum distance of 75 miles and an average distance of 30 to 35 miles; and that it can be brought this distance in a satisfactory condition. The Secretary also refers to evidence that actual hauling costs are less than the amounts allowed handlers in the "transportation differential", and argues that plaintiff is in fact compensated by reason thereof for any slight service which it may render to its producers.

 Section 8c (15) (A) of the Act provides that the Secretary's ruling on a petition filed under Section 8c (15) (A) of the Act "shall be final, if in accordance with law." It has been uniformly held that the review provisions of this section do not authorize a trial de novo, but rather require a determination merely of whether there is sufficient evidence to support the Secretary's findings. New York State Guernsey Breeders Co-op., Inc., v. Wallace, D.C., 28 F.Supp. 590; Vogt's Dairies v. Wickard, D.C., 45 F.Supp. 94; M. H. Renken Dairy Co. v. Wickard, D.C., 45 F.Supp. 332; Queensboro Farm Products v. Wickard, D.C., 47 F.Supp. 206, affirmed 2 Cir., 137 F.2d 969; Cosgrove v. Wickard, D.C., 49 F.Supp. 232. And it is a generally recognized principle that a court may not disturb an administrative ruling supported by substantial evidence, even though the court, upon a consideration of all the evidence, might have reached a different conclusion. Swayne & Hoyt v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659, 664;

Marshall v. Pletz, 317 U.S. 383, 388, 63 S.Ct. 284, 87 L.Ed. 348, 351; Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 228, 63 S.Ct. 589, 87 L.Ed. 724, 730. And finally, it is recognized that the burden of showing that legislative or administrative classifications are arbitrary and discriminatory is upon the party challenging them, and that proof of such discrimination may not be remote or fanciful. Borden's Farm Products v. Baldwin, 293 U.S. 194, 209, 55 S.Ct. 187, 79 L.Ed. 281, 288; United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 567, 59 S.Ct. 993, 83 L.Ed. 1446, 1467.

 Applying the above principles, I am unable to say that there is no substantial evidence to support the Secretary's findings or that Order No. 61 is arbitrary, unreasonable and confiscatory as applied to plaintiff. All parties concede that receiving stations at a considerable distance from the city market perform valuable service to the producer for which the handler is entitled to compensation in the form of a minimum price lower than that payable for milk delivered directly to the city market. It is equally obvious that a receiving station extremely close to the city market, as, for example, within a mile thereof, performs negligible service to the producer and should not be permitted a receiving station allowance. At what distance from the city market the service becomes sufficiently valuable to warrant the allowance of a differential is a matter which is peculiarly within the scope of matters properly determinable by administrative agencies and tribunals with technical knowledge and skill in the problems involved. In the determination of the intricacies of such problems, termed by Judge Frank as "exquisitely complicated,"[3] perfect justice cannot be done to all, and the creation of reasonable categories is bound to work hardship on some. Hardship to some is the necessary concomitant of all social and economic change tending to benefit the many.

Such hardship, however, does not form a basis for the allowance of the plaintiff's alternative contention in the present case that the Secretary of Agriculture should have exempted it from the provisions of Order No. 61. In view of the Secretary's

---

from the significance of the fact that they were willing to accept a lower price rather than ship their milk directly. Naturally, these producers have everything to gain if they can continue to use plaintiff's facilities and nevertheless obtain a higher minimum price.

[3] Queensboro Farm Products, Inc., v. Wickard, 2 Cir., 137 F.2d 969, 974.

finding, supported by substantial evidence, that plaintiff does not render sufficient service to producers to justify a receiving station allowance, exemption of the plaintiff from the order would be inequitable to the producers, in that they would be required to pay for a service not obtained, and would be discriminatory to competing handlers.

Finally, plaintiff has argued at length that this matter may not be disposed of upon a summary judgment under Rule 56 of the Federal Rules of Civil Procedure, because the pleadings show numerous issues as to material facts. This contention is without merit. As pointed out previously, the determination whether the Secretary's ruling is "in accordance with law" is based upon the record before him rather than upon a trial de novo. If the motion for judgment were denied and the case proceeded to trial, the identical record would then be before the court and nothing else. It is therefore obvious that there are, under the pleadings, no such issues as to any "material" facts which would warrant denial of the motion in favor of disposition of the case by trial.

Defendant's motion for summary judgment is granted.