**C. J. WIELAND & SON DAIRY PRODUCTS CO., Inc., v. WICKARD, Secretary of Agriculture.**

Civil Action No. 1335.

District Court, E. D. Wisconsin.

Sept. 19, 1946.

See also, D.C., 4 F.R.D. 250.

Shockley & Gunsburg, of Milwaukee, Wis., and Arthur R. Seelig, of Chicago, Ill., for plaintiff.

Timothy Cronin, U. S. Atty., and H. W. Hilgendorf, Asst. U. S. Atty., both of Milwaukee, Wis., and John Toohey, Atty. for Sol. Office of U. S. Dept. of Agriculture, and J. L. Cook, Atty. for Federal Milk Market Administrator, both of Chicago, Ill., for defendant.

DUFFY, District Judge.

This is an action brought under Title 7 U.S.C.A. § 608c (15) (B) to review a ruling of the Secretary of Agriculture dated December 14, 1943, which was adverse to the plaintiff.

Order 41 was issued by the Secretary of Agriculture effective September 1, 1939. This order regulated the handling of milk in the Chicago marketing area. The plaintiff, whose place of business is located within this judicial district, is a "handler" of milk as defined in said order. Plaintiff purchased milk directly from producers and made payment to such producers and also to the Chicago Milk Market Administrator, based upon the quantity of milk received, the butterfat content, and the ultimate use thereof as provided in said order. At stated times the plaintiff paid to the milk administrator and the Producers Settlement Fund, created pursuant to the order, the amounts required to be paid by said order, and also paid the market administrator plaintiff's share of the market service charge involved in the weighing, sampling, and testing of the butterfat content of the milk.

94

During the nineteen month period in question from September 1, 1939, to March 31, 1941, plaintiff's producers customarily delivered their milk to the plaintiff's plant in cans, the contents being poured into a weigh tank owned by the plaintiff. As each batch of milk was delivered by a producer, employees of the plaintiff took from the center of the weigh tank a small sample without additional agitation, stirring, or mixing other than normally occurred in the pouring operation. After a fifteen day period of collecting such daily samples, the composite sample was turned over to a market administrator technician for testing. Customarily the technician took a fresh milk sample from the batch of milk delivered on that day for the purpose of checking the test of the composite sample.

Plaintiff discovered an unexplainable butterfat loss and suggested to the market administrator that he conduct tests to ascertain the cause thereof. Thereafter, on seventeen days during the period from April 23 to July 2, 1941, tests were conducted as to each batch of milk brought into plaintiff's plant. The tester used the old method and also made tests after the same milk was stirred in the weigh tank. Although some few tests showed no difference between the stirred and unstirred samples, and still a few others showed more butterfat in the stirred, yet the general result was that the unstirred milk showed an excessive proportion of butterfat equal to 3.4257%.

Plaintiff claims that under the order it was the duty of the market administrator to check and determine the weight, quantity and butterfat test of all milk received by a handler, and to verify such payments by the handlers to their producers. Plaintiff contends that the test conducted under the direction of the market administrator during the seventeen days after the period in question proved that testing for butterfat in unstirred milk was an improper procedure, and thus that samples taken in the nineteen month period were not representative samples and indicated a higher butterfat content than the milk actually contained. Plaintiff argues that as a result of such improper procedure it made excess payments of some $13,000 to its producers

and to the Producers Settlement Fund. The amount calculated as overpaid directly to the producers was $10,889.78. Plaintiff insists that the responsibility was that of the market administrator and that plaintiff's entire loss of $13,000 should be repaid to it from the Producers Settlement Fund or other funds administered by the market administrator.

On June 22, 1942, pursuant to Sec. 608c (15) (A) of the act, plaintiff filed a petition with the Secretary of Agriculture praying for relief. A hearing was held at which time plaintiff produced oral and documentary testimony. On August 6, 1943, a "report of presiding officer" was issued. Plaintiff, being dissatisfied, filed exceptions and thereafter a hearing was had at Washington, D. C. On December 14, 1943, the Secretary of Agriculture by and through the War Food Administrator issued a "preliminary statement, findings of fact, conclusions, and order" which denied the relief requested by plaintiff. Claiming that the ruling of the Secretary was erroneous and not in accordance with law, this action was commenced by plaintiff.

A trial de novo was not had in this court; the case was submitted upon the record made at the hearings hereinbefore described.

The defendant strongly urges that in no event could he be required to pay $10,889.78 which plaintiff claims to have overpaid its producers; and that if plaintiff has any claim for this amount it is those who received the excess payments who are liable. While there is much force to this contention, it need not be here decided in view of the disposition of this case on other grounds.

It is well established that if the order of the Secretary is supported by substantial evidence and is not contrary to law, it is the duty of the court not to interfere with such determination. Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659; Wawa Dairy Farms, Inc. v. Wickard, Secretary of Agriculture, D. C., 56 F.Supp. 67. In the case of Rochester Telephone Corporation v. United States, 307 U.S. 125, 139, 59 S.Ct. 754, 762, 83 L.Ed. 1147, the court said:

"* * * Even when resort to courts can be had to review a Commission's order, the range of issues open to review is narrow. Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontestable. * * *"

In the case at bar there is very little dispute as to the facts involved; however, the conclusions to be drawn therefrom mark the difference between the parties. In Gray v. Powell, 314 U.S. 402, 412, 62 S.Ct. 326, 333, 86 L.Ed. 301, the court said: "* * * Although we have here no dispute as to evidentiary facts, that does not permit a court to substitute its judgment for that of the Director. * * *"

The various rules of law heretofore stated are applicable in this case. In Queensboro Farm Products, Inc. v. Wickard, Secretary of Agriculture, D. C., 47 F.Supp. 206, 210, the court said: "The findings of the administrative officer are conclusive if there is any evidence to support them and the Court may not weigh the evidence and substitute its independent findings for those of the administrative officer. * * *"

The duty of the administrator was set out in Sec. 941.3 of the order which provides that handlers shall make monthly reports showing quantities of milk received, butterfat tests, and utilization. It further requires that the market administrator shall verify all reports and payments of each handler, and that each handler shall make available to the market administrator such facilities as will enable him "to weigh, sample, test for butterfat content, the milk received from producers * * *."

The evidence before the Secretary showed that the weigh tank of the plaintiff at the time in question did not have a mechanical agitator, although some tanks were so equipped; furthermore, that the plaintiff did not make any tests of its own, but relied upon the tests of the market administrator. No order or regulation by the market administrator prevented the plaintiff from installing an agitator in its weigh tank or from making tests of its own if it so chose. The technician of the market administrator could not stir the milk that went into the composite samples although this could have been done by the plaintiff's employees. The technician could undoubtedly have stirred the fresh milk when he took a sample to check against the composite sample.

Ample evidence sustained the findings of the Secretary of Agriculture, and I conclude there was no error of law in the order as issued.

Judgment may, therefore, go for the defendant.