**BEATRICE CREAMERY CO. et al. v. ANDERSON, Secretary of Agriculture.**

No. 2615.

District Court, D. Kansas, Second Division.

July 2, 1947.

364

Karl P. Spencer, of St. Louis, and George B. Powers, of Wichita, Kan. (Foulston, Siefkin, Bartlett & Powers and Cowan, Kahrs and Nelson, all of Wichita, Kan., on the brief), for plaintiff.

J. Stephen Doyle, Sp. Asst. to Atty. Gen., Earl J. Smith and Julius C. Krause, Office of Solicitor, United States Department of Agriculture, both of Washington, D. C., Randolph Carpenter, U. S. Atty., for District of Kansas and Eugene Davis, Asst. U. S. Atty., both of Topeka, Kan., for District of Kansas, for defendants.

Darold I. Greek, of Columbus, Ohio (Dargusch, Caren, Greek & King, of Columbus, Ohio, on the brief), amici curiae on behalf of members of Columbus Milk Distributors Ass'n. .

MELLOTT, District Judge.

This is an action under Section 8c(15) (B) of the Agricultural Marketing Agreement Act of 1937, as amended,[1] to review the ruling of the Secretary of Agriculture (or the one temporarily exercising his functions, in this case the War Food Administrator) as embodied in Federal Milk Order No. 68, providing for the handling of milk in the Wichita, Kansas, Marketing Area. The plaintiffs are milk dealers—"handlers"—in that area. The action was instituted by the filing of a complaint, in the manner required by the act, to which answer was timely filed.

No issue of fact is, or can be raised in this court under the applicable act. Its jurisdiction is limited to determining whether the ruling complained of is "in accordance with law." [2] Plaintiffs espouse

---

[1] Title 7 U.S.C.A. § 608c (15) (B).

[2] "* * * If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary * * *." So reads the statute. Cf. New York State Guernsey Breeders' Co-operative v. Wickard, 2 Cir., 141 F.2d 805, 153 A. L.R. 1165; Vogt's Dairies, Inc. v. Wickard, D.C., 45 F.Supp. 94; M. H. Ranken Dairy Co. v. Wickard, D.C., 45 F. Supp. 332; Queensboro Farm Products Inc. v. Wickard, D.C., 47 F.Supp. 206; Bailey Farm Dairy Co. et al. v. Jones et al., D.C., 61 F.Supp. 209, affirmed, 8 Cir., 157 F.2d 87; Ogden Dairy Co. v. Wickard, 7 Cir., 157 F.2d 445.

a negative and defendant espouses an affirmative answer to the question thus indicated.

The basic facts are substantially as follows: A license regulating the handling of milk in the area of Wichita, Kansas (hereinafter referred to as the Wichita Area), had been issued under the provisions of earlier Agricultural Adjustment of Marketing Acts. It was suspended at the time the order presently in issue became effective.

On December 24, 1943, notice of hearing on a proposed marketing agreement and a proposed marketing order was published in the Federal Register (8 F.R. 17313). Pursuant to such notice a public hearing was held at Wichita, Kansas, on January 12 and 13, 1944. The plaintiffs, by their representatives and by counsel, participated in the hearing. Time was allowed for the filing of briefs and arguments and a brief was filed on behalf of plaintiffs. A report on the proposals was thereafter made by the Acting Director of Food Distribution, War Food Administration, to whom such function had been delegated. The report recommended the issuance of the marketing agreement and order, the terms of which were stated in the report. The report, together with a notice of opportunity to file exceptions thereto, was published in the Federal Register on March 21, 1944 (9 F.R. 3052). Exceptions were filed by the plaintiff asserting, inter alia, that the Administrator had no jurisdiction over the Wichita market. Some changes were made in the proposed marketing agreement and order; but plaintiffs refused to execute it. Following a producer referendum, more than two thirds of the producers having approved the order, it was submitted to and approved by the Honorable Fred M. Vinson, Director of Economic Stabilization, acting on behalf of the President.

On July 31, 1944, plaintiffs filed a petition with the Secretary of Agriculture pursuant to Section 8c(15) (A) of the Agriculture Marketing Agreement Act of 1937,[3] contending that the order was unlawful and not in accordance with law because: (1) The Administrator was without jurisdiction to impose a marketing order in the Wichita Area; (2) the Administrator had failed to make essential findings; (3) the prior proceedings, the issuance of the order, and some of its terms and provisions were not in accordance with law.

A pre-hearing conference on the petition referred to in the preceding paragraph was held before Thomas J. Flavin, then Assistant to the War Food Administrator, the plaintiffs making written offer of proof as to facts thought to show lack of jurisdiction to impose such an order, the offer of proof being denied. The issue was submitted to Mr. Flavin on written suggested findings of fact and conclusions, supported by briefs and arguments on behalf of the plaintiffs and on behalf of the Office of Distribution of the War Food Administration. Thereafter, on May 21, 1945, Mr. Flavin issued his tentative ruling to which interested parties were given opportunity to except and to support their exceptions with written arguments. Exceptions and arguments were filed on behalf of plaintiffs.

On July 12, 1945, Thomas J. Flavin, Assistant to the Secretary of Agriculture and duly authorized to act for him, issued his ruling and dismissed plaintiff's petition. Thereafter, and within the period specified in Section 8c(15) (B), supra, the complaint now before the court was filed and answered.

The six plaintiffs are the "handlers" of all the fluid milk and milk products priced by the order and sold in the Wichita Marketing Area. The Producers Association, at the time of the hearing preceding the order, was composed of 378 members, all but five of whom were located in Kansas, the others being in Oklahoma.

Because of the war emergency two kinds of milk—"graded" and "ungraded"—were permitted by the Board of Health to be sold in Wichita. "Graded milk" must have been produced by an approved producer, must be pasteurized and when sold in bottles must be labeled "Grade". The Wichita milk ordinance did not permit ungraded milk to be bottled and sold for consump-

---

[3] Title 7 U.S.C.A. § 608c (15) (A).

tion; but due to the war emergency and to meet the increased demand for milk resulting therefrom, the sale of pasteurized ungraded milk in bottles was temporarily permitted if labeled "Grade C." Graded and ungraded raw milk were not commingled in plaintiffs' plants, the graded always being processed first and before the handling of the ungraded. Although the sale of ungraded milk was temporarily allowed, only graded milk is priced by the order in issue.

Approximately 1.8 per centum of the graded milk and 3.7 per centum of the ungraded milk handled by the plaintiffs came, during the year preceding the making of the order, from outside the state of Kansas. The imported graded milk was received from five producers near Blackwell, Oklahoma, 91 miles from Wichita. The five producers represented 1.3 per centum of the total of 378 producers. The promulgation record indicated and the administrator's report holds "that none of petitioners sells fluid whole milk, graded or ungraded, outside the State of Kansas, and no fluid whole milk is sold in the marketing area by handlers from outside of Kansas."

Based upon the facts so far recited, plaintiffs adopt the postulate that "the sole issue is whether the 1.8% of graded milk received by plaintiffs from Oklahoma during the twelve months immediately preceding the public hearing are sufficient to sustain the Secretary's jurisdiction and authority to issue an order." Defendant correctly points out upon brief, however, that he has specifically averred in his answer "the promulgation record shows that substantial quantities of both graded and ungraded milk are brought into the marketing area from outside the State of Kansas; that substantial quantities of milk products are transferred from the Wichita marketing area to points outside the State of Kansas; that suppplies of milk in Oklahoma are available for the Wichita marketing area when marketing conditions in Wichita are favorable; and that the handling of milk in the Wichita marketing area directly affects interstate commerce in milk and its products."

In the judgment of this court it has no jurisdiction to substitute its findings for those of the administrative authority. Examination of the hearing record discloses, however, that approximately 560,000 pounds of graded milk had been brought into the Wichita market from Oklahoma during the year immediately preceding the hearing (pro. Ex. 23)[4] and that ungraded milk in substantial quantities— approximately 200,000 pounds per month— had also been brought in, a considerable portion of which had reached the same trade channels as the graded milk due to the shortage of graded milk. If the ungraded milk be ignored, as plaintiffs urge should be done since ungraded milk is not priced in the order, then the percentage of milk "in the current of interstate or foreign commerce, or which directly burdens, obstructs, or affects, interstate or foreign commerce in such commodity or product thereof" (7 U.S.C.A. § 608b) was 1.8. If, on the other hand, the ungraded milk be included, then the percentage would be approximately 5.

Assuming, without deciding, that the percentage is as contended by plaintiffs, consideration will now be given to the arguments made in the briefs filed in their behalf and in the brief amicus curiae. In essence, the contention in each is the same—viz., that the "Interstate Commerce in graded milk * * * is too slight and too immaterial upon which to predicate Federal Regulation of the marketing of the predominantly intrastate milk, and is temporary and not a part of the usual, regular or normal business of plaintiffs";[5] that it is absurd and borders on the ridiculous to regulate the intrastate milk since only 1.8 per centum of the total milk priced in the order moves in interstate commerce;[6] and that the "doctrine of de minimis"[7] is applicable.

[4] The exhibit is referred to in the briefs as Exhibit 28. It is one of two documents marked as Exhibit 23.

[5] The quotation is from plaintiffs' briefs.

[6] See P. 4 of Brief Amicus Curiæ.

[7] De Minimis non curat lex or De Minimis non curat praector. The law cares not for small things or the praector does not concern himself about trifles.

The Supreme Court has passed upon the validity of orders similar to the one in issue in at least three cases—United States v. Rock Royal Cooperative Inc. et al., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; H. P. Hood & Sons Inc. et al. v. United States, 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478; and United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726. In none was it suggested that the percentage of milk in interstate or intrastate commerce was important. True, the so-called doctrine "De Minimis" was not discussed; but, as plaintiffs point out upon brief, other cases involving some feature of interstate commerce have also been decided without any specific reference to it. See e. g., Connecticut Light & Power Co. v. Federal Power Commission, 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150. Nor are plaintiffs substantially aided by their analyses of decisions by the Supreme and inferior courts under other acts passed pursuant to the general power of Congress to regulate interstate commerce. None of them, in this court's judgment, contains a more inclusive direction. The administrative authority is given the power to regulate the handling " * * * of any agricultural commodity or product thereof, * * * as is in the current of interstate or foreign commerce or which directly burdens, obstructs, or effects, interstate or foreign commerce in such commodity or product thereof." The Congress made no mention in the act of percentages which must exist nor can this court, by judicial interpretation, read any such provision into it. Cf. Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; Consolidated Edison Co. of New York et al. v. National Labor Relations Board et al., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; United States v. F. W. Darby Lumber Co. et al., 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

It is strenuously argued that under the rationale of National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, and Santa Cruz Fruit Packing Co. v. National Labor Relations Board, supra, Federal intervention in intrastate activities can only be justified where the effect on interstate commerce is substantial. If this premise be adopted it furnished slight, if any, aid in the instant case. The transportation in interstate commerce of a half million pounds of graded milk or two million pounds of graded and ungraded milk might be a relatively small percentage of the total handled in the area. Yet this court could not say, as a matter of law, that the handling of a much larger quantity of the same product did not bear a close and substantial relation to the portion moving interstate. The "reach of that power" granted by the commerce clause to the Congress and under which the act in issue was passed, "extends to those intrastate activitites which in a substantial way interfere with or obstruct the exercise of the granted power." "It extends to those activities intrastate which so affect interstate commerce * * * as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce." United States v. Wrightwood Dairy Co., supra, 315 U.S. at page 119, 62 S.Ct. at page 526, 86 L.Ed. 726. It is, of course, possible that this, or some other, court might hesitate to find, under facts similar to those disclosed by the present record, that the effect on interstate commerce in the product was substantial; but the power to make such determination has been lodged elsewhere. It cannot be held on the present record, however, that the determination "is not in accordance with law", even under the maxim de minimis.

The other issues raised by the pleadings and discussed upon brief may be noticed briefly. The failure to grant plaintiffs a hearing de novo under the (15) (A) petition was not, in the judgment of this court, erroneous. Bailey Farm Dairy Co. et al. v. Jones et al., supra, and other cases cited in footnote 2. Cf. Interstate Commerce Commission et al. v. City of Jersey City et al., 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; United States v. Wrightwood Dairy Co., 7 Cir., 127 F.2d 907. The finding that the handling of all milk disposed of in the marketing area "is in current of interstate commerce, or,

directly burdens, obstructs or affects interstate commerce in milk and its products" is assailed as not being a finding of fact but a mere "parroting" of the statute and no more than a conclusion of law. North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760, is particularly relied upon, reference also being made to the Administrative Procedure Act[8] although, of course, no contention is made that the latter is applicable. The cited case held that before the Interstate Commerce Commission could nullify state transportation rates upon the ground that they injuriously affected interstate transportation, clear findings, supported by evidence, of each element essential to the exercise of its power, must be made. Desirable as such findings may be, even in a quasi-legislative hearing[9] such as was held in this case preceding the issuance of the order, this court is of the opinion that the order cannot be found to be "not in accordance with law" on the ground suggested. It is not without significance that the finding made, or conclusion expressed, is, in all essential respects, similar to the orders approved by the Supreme Court in the Rock Royal and Wrightwood cases, supra. Moreover, it is supported by the evidence.

■ The next contention of the plaintiffs is that the "standards to be observed by the Secretary in promulgating (the) order" were not adhered to. The argument is that the prices should have been at "parity" under Section 602 or, under Section 608c(18), there must have been a finding of "parity" before the alternate standard could be invoked. Therefore, it is urged, "it was fatal error for the government to omit the spreading of parity across the face of the record."

The order in question was issued under Subsections (3) and (4) of Section 608c because there was "reason to believe that the issuance of an order (would) tend to effectuate the declared policy of this chapter with respect to" milk and the products thereof. Due notice of and an opportunity for a hearing, as provided in the act, was given. "After such notice and opportunity for hearing" the administrative officer found and set forth in his order, "upon the evidence introduced at such hearing * * * that the issuance of such order and all of the terms and conditions thereof (would) tend to effectuate the declared policy * * * with respect to such commodity." The order contained the provisions set out in subsections (5) and (7) and became effective at the time and in the manner prescribed by subsections (8) and (9). The need for the order and the terms to be incorporated in it seem to be a matter of discretion to be exercised by the administrative officer, not subject to judicial control unless abused or exercised arbitrarily or capriciously. "Parity"—a technical and scientific fact determined by administrative officials from statistics in the Department of Agriculture[10]—while probably known to all the interested parties, including the examiner, at the time of the hearing, is not, in the judgment of this court, made such a controlling factor in the determination to be made that its lack is a fatal defect.

Defendant argues, with some plausibility, that plaintiffs cannot, at this time, question the validity of the order on the basis of the lack of a showing of parity prices since they appeared at the hearing, with counsel, and failed to raise the question, or to mention it in briefs or exceptions. This court prefers not to rest its decision on that ground, however.

Finally, it is averred in the petition, although not seriously urged upon brief, that the following finding: "The prices calculated to give milk produced for sale in the said marketing area a purchasing power equivalent to the purchasing power of such milk as determined pursuant to sections 2 and 8(e) of the act are not reasonable in view of the price of feeds, available supplies of feeds, and other economic conditions which affect market supplies of

---

[8] 60 Stat. 237, Title 5 U.S.C.A. §§ 1001–1011, passed June 11, 1946.

[9] Pacific States Box & Basket Co., 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; United States v. Curtiss-Wright Export Corp. et al., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 and other cases indicate that detailed findings need not be made when the function being performed is legislative.

[10] 7 U.S.C.A. § 608e.

and demand for such milk, and the minimum prices specified in the said order are such prices as will reflect the aforesaid factors, insure a sufficient quantity of pure and wholesome milk, and be in the public interest", is not a finding of fact, is a conclusion of law, is wholly without support in the record and is contrary to all of the evidence upon which it purports to be based.

If the issue tendered were within the province of this court it would probably be resolved in favor of the defendant; for there seems to be ample evidence to support the finding made. The limited review authorized by the statute, however, permits this court only to hold, as it does, that the order has not been shown to be "not in accordance with law."

Plaintiff's prayer for relief is denied and the clerk is instructed to note upon his civil docket, as provided in Rule 79(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, and Rule XXI of the Rules of Practice of this court, a general judgment in favor of the defendant. The costs shall be taxed against the plaintiffs.